IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SWAN VIEW COALITION and FRIENDS OF THE SWAN,<br>                    Plaintiffs,<br><br>        vs.<br><br>DOUG BURGUM, Secretary of the Interior, *et al.*,[1]<br><br>                    Defendants. | CV 22–96–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiffs Swan View Coalition and Friends of the Wild Swan's ("Plaintiffs") Amended Motion for Attorney Fees and Costs. (Doc. 84.) Plaintiffs seek an award of $163,257.69 pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), or alternatively, the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (*Id.* at 2; Doc. 85 at 7.) For the reasons herein, this Motion will be granted and the full fee amount awarded.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is the second iteration of challenges brought against the Biological Opinion for the Flathead National Forest's 2018 Revised Land Management Plan

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Doug Burgum, Secretary of the Interior, is automatically substituted for Deb Haaland. Likewise, Brian Nesvik, Regional Director of the U.S. Fish and Wildlife Service, exercising the delegated authority of Director of the U.S. Fish and Wildlife Service, is automatically substituted for Paul Souza, and Tom Schultz, Chief of the U.S. Forest Service, is automatically substituted for Randy Moore.

1

(the "Revised Plan"). (Doc. 16); *See WildEarth Guardians v. Steele*, 545 F. Supp. 3d 855, 862–63 (D. Mont. 2021), *aff'd in part, vacated in part, remanded sub nom. Swan View Coal. v. Steele*, No. 22-35137, 2023 WL 3918686 (9th Cir. June 9, 2023) (hereinafter *Flathead I*). The Flathead National Forest (the "Forest") is located in the northern Rocky Mountains of Western Montana and is comprised of approximately 2.4 million acres of public land, including wilderness areas, lands managed for timber production, lands interspersed with private development, and critical habitat for threatened species. USFWS_037154–55. Within the Forest, there are five federally designated threatened species: bull trout, grizzly bear, Canada lynx, spalding's campion (or "catchfly"), and meltwater lednian stonefly. USFWS_037154.

Plaintiffs filed the instant action on May 31, 2022 (Doc. 1), and filed the First Amended Complaint on September 23, 2022 (Doc. 16). The First Amended Complaint alleges that Fish and Wildlife Service ("FWS") and the U.S. Forest Service ("Forest Service") violated the ESA by failing to rationally consider threats to grizzly bears (Claim I) and bull trout (Claim II). The parties filed cross-motions for summary judgment (Docs. 26, 29) and Magistrate Judge DeSoto issued her Findings and Recommendations on March 11, 2024, following oral argument. (Doc. 58.) This Court issued its Order adopting in part, rejecting in part, and modifying in part the Findings and Recommendations in June 2024. (Doc. 65.)

2

Following an appeal by the government that was voluntarily dismissed (Doc. 75), Plaintiffs filed the present Motion seeking attorney fees (Doc. 84).

**LEGAL STANDARD**

Under the ESA's citizen-suit provision, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate." 16 U.S.C. § 1540(g)(4). This fee shifting provision was intended to "expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties— parties achieving some success, even if not major success." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983). Such an award is appropriate where the fee-seeking party had "some degree of success on the merits," *id.* at 680, and substantially contributed to the goals of the ESA, *Carson-Truckee Water Conservancy Dist. v. Sec'y of the Interior*, 748 F.2d 523, 525 (9th Cir. 1984), *abrogated on other grounds by Marbled Murrelet v. Babbit*, 182 F.3d 1091, 1094– 95 (9th Cir. 1999).

To determine an appropriate award, a court starts with the lodestar figure, which is determined by multiplying a reasonable hourly rate by the number of hours expended on the litigation. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The fee-seeking party bears the initial burden of demonstrating that counsel's requested fees are reasonable. *Hensley v. Eckerhart*,

3

461 U.S. 424, 437 (1983). When "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* at 435. "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace v. Stewart*, 2020 WL 2465321, at *8 (9th Cir. 2020) (citing *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982)).

Once the moving party meets their burden to establish that the requested fees are reasonable, the burden shifts to the opposing party to demonstrate that the requested fees are unreasonable. *Gates v. Duekmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). "A court may reduce a fee request by conducting an hourly audit or a holistic percentage reduction." *Crow Indian Tribe v. United States*, 2021 WL 3142155, at *3 (D. Mont. July 26, 2021). Principally though, the purpose of fee shifting policies is to effectuate justice and "not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

**DISCUSSION**

**I.      Plaintiffs are Entitled to Fees and Costs under the ESA**

Plaintiffs seek $136,546 in attorney fees and costs under the ESA section 11, which authorizes an award of litigation costs and fees where a court determines such an award is appropriate. 16 U.S.C. § 1540(g)(4). (Doc. 85 at 21.) An award is "appropriate" where the plaintiff demonstrates: (1) "some degree of success on the merits," *Ruckelshaus*, 453 U.S. at 694; and (2) substantially contributed to the goals of the ESA, *Carson-Truckee Water Conservancy Dist.*, 748 F.2d at 525.

Here, Plaintiffs secured a judicial order finding that they were entitled to summary judgment on four of their ESA arguments: (1) "regarding grizzly bears insofar as FWS failed to address the exclusion of unauthorized motorized use from road density calculations and, to the extent the agency did address this issue, failed to articulate a satisfactory explanation regarding its decision," (2) "regarding grizzly bears insofar as FWS offered an explanation for its decision to exclude impassable roads from [road-density calculations] that runs counter to the evidence before the agency"; (3) "regarding bull trout and bull trout critical habitat insofar as FWS failed to address its decision to abandon the culvert removal requirement with respect to impassable roads"; and (4) "insofar as the Forest Service relied on the flawed provisions of the Revised [Biological Opinion]." *See Swan View Coal. v. Haaland*, 2024 WL 3219206, at *19 (D. Mont. June 28, 2024). Accordingly,

Plaintiffs undoubtedly achieved "some degree of success on the merits" and substantially contributed to the protection of bull trout and grizzly bears. *See Ruckelshaus*, 453 U.S. at 694. Therefore, Plaintiffs are entitled to fees under the ESA. [2]

## II.    Reasonableness of Fee Award

### A. Degree of Success

Defendants first argue that Plaintiffs' "limited success on its claims for relief necessitates a reduction" in the total fee award. (Doc. 88 at 11.) Where, as here, a plaintiff achieves less than complete victory, "the size of the relief may impact the size of the eventual fee award." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). To determine the size of the fee award in these circumstances, courts apply a two-pronged test, looking to (1) the relationship between the claims on which a plaintiff prevailed and those on which it did not; and (2) whether the plaintiff's degree of success justifies an award for fees incurred in pursuing related, but ultimately unsuccessful claims. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1172 (9th Cir. 2019) (en banc). In addressing the second question, "a district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Sorenson*

---

[2] Plaintiffs alternatively argue their fees motion under the EAJA. Defendants do not dispute that the ESA governs the fee award and that Plaintiffs are entitled to fees, they simply dispute the amount requested. (Doc. 88 at 7.)

*v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (quoting *Hensley*, 461 U.S. at 435). The Court finds that a reduction is not warranted.

Defendants do not contest whether the claims at issue are related; indeed, the claims brought in the First Amended Complaint all pertain to the Forest Plan and to alleged violations of the ESA. Rather, Defendants attempt to minimize Plaintiffs' success by comparing the claims upon which they prevailed with the total number of arguments made. However, this kind of "mathematical approach . . . provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at 435 n.11 (cleaned up). "Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Id.* Plaintiffs obtained a favorable judgment on their four primary ESA arguments and secured a remand of FWS's Biological Opinion on impacts to grizzly bears and bull trout. *See Swan View Coal.*, 2024 WL 3219206. Although this Court rejected Plaintiffs' vacatur request, the litigation nonetheless resulted in the cessation of three challenged forest projects pending revision of the Biological Opinion, which is still ongoing. (*See* Doc. 64 ¶ 6.) The overall relief obtained here is thus a significant victory for the Plaintiffs. *See Sorensen*, 239 F.3d at 1147.

## B. Hourly Rates

Under the ESA, a reasonable rate is determined by the prevailing market rate in the relevant legal community. *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th

Cir. 2003). Courts routinely rely on decisions of other district courts to determine rates for comparable attorneys in the same geographical area. *See Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009). This Court has previously "limit[ed] the relevant community to environmental attorneys in Montana with commensurate experience, reputation, and skill." *All. for the Wild Rockies v. U.S. Dep't of Ag.*, 2016 WL 4766234, at *7 (D. Mont. Sept. 13, 2016). Moreover, the District of Montana has historically permitted a $10 annual wage increase. *See Crow Indian Tribe*, 2021 WL 3142155, at *11.

Plaintiffs request a rate of $380–$410 per hour for Timothy Preso and $220–$260 per hour for Benjamin Scrimshaw for work performed from 2022 to the present day. (Doc. 85 at 17.) Plaintiffs further request a rate of $100 per hour for three law clerks and one spring extern, who assisted with legal research, drafting declarations, and other tasks. (*Id.*) Plaintiffs support their fee request with an affidavit from Montana practitioner Kyle W. Nelson. (Doc. 85-1.)

Relying on *Victory Processing, LLC v. Knudsen*, 2021 WL 587905 (D. Mont. Feb. 16, 2021), *Yuriioviych v. Hryhorivna*, 2025 WL 660634 (D. Mont. Feb. 28, 2025), and *Gonzales ex rel A.G. v. Burley High School*, 2020 WL 7047747 (D. Idaho Nov. 30, 2020), Defendants challenge the hourly rates requested by Mr. Scrimshaw as higher than those found to be reasonable within this District for

attorneys of similar experience.[3] (Doc. 88 at 16.) Defendants believe that Mr. Scrimshaw's rates should be reduced to $200 per hour for 2022 and 2023 and $210 per hour for 2024 and 2025. (*Id.*) However, Defendants seek to reduce Mr. Scrimshaw's rates based upon a comparison with attorneys from outside the environmental field and, in one instance, outside Montana. *See Victory Processing, LLC*, 2021 WL 587905 (involving Montana's "robocall" statute), *Yuriioviych*, 2025 WL 660634 (involving the Hague Convention), and *Gonzales ex rel A.G.*, 2020 WL 7047747 (involving a First Amendment violation in Idaho). These are not the proper standards. *See All. for the Wild Rockies*, 2016 WL 4766234, at *4 (limiting relevant community to "environmental attorneys in Montana with commensurate experience, reputation, and skill.").

Rather, Mr. Scrimshaw's rates are commensurate to those approved by this Court for a similarly situated environmental attorney in Montana. *See Crow Indian Tribe*, 2021 WL 3142155, at *1. In *Crow Indian Tribe*, this Court granted attorney Joshua Purtle, a 2013 law school graduate, $220 per hour for work performed in 2017 and $230 per hour for work performed in 2018 on a case brought under the ESA. *Id.*, at *12; *Crow Indian Tribe*, D. Mont. CV 17-89-M-DLC (Doc. 345-5 at

---

[3] Defendants do not challenge the hourly rates of Tim Preso, and the Court finds these rates to be reasonable in light of Mr. Preso's significant experience in environmental litigation. (*See* Doc. 88 at 16, 17.) Defendants similarly do not challenge the rates billed by the interns or spring extern.

10–15) (Jan. 29, 2021); (Doc. 90-1 ¶ 3.) Like Mr. Purtle, Mr. Scrimshaw was four years removed from law school at the time this litigation commenced, and Mr. Scrimshaw and Mr. Purtle were employed by the same environmental law organization during the relevant time periods. (Doc. 90-4 ¶ 8.) Therefore, because Mr. Scrimshaw's experience is commensurate with that of Mr. Purtle in 2017, it is more than reasonable that Mr. Scrimshaw be awarded corresponding rates for work performed from 2022 to the present day. *See Crow Indian Tribe*, at *11 (noting that the District of Montana historically permits a $10 annual wage increase). This conclusion is bolstered by the fact that market rates have increased significantly since 2017; Mr. Scrimshaw's rates "are, if anything, low for the Bozeman, Montana community." (Doc. 85-1 ¶ 15.)[4]

## C. Reasonable Hours Expended

Plaintiffs argue they are entitled to the hours reflected by their contemporaneous timesheets. (Doc. 85 at 21.) Plaintiffs explain the requested hours reflect an exercise of billing judgment to eliminate redundant or unnecessary entries, time spent on intermittent contributions by law clerks and other attorneys, hours spent on matters such as media outreach and internal administrative tasks, and time spent on appellate proceedings. (*Id*. at 20.) These hours also reflect "the

---

[4] Defendants also offer no explanation for departing from this District's accepted practice of allowing $10 annual rate increases. *See Crow Indian Tribe*, 2021 WL 3142155, at *11.

division of labor throughout the litigation [to] maximize[] hours spent by lower-billing clerks and Mr. Scrimshaw, minimizing the higher rate hours billed by Mr. Preso." (*Id.* at 22 (citing Doc. 85-1 ¶ 24).). Plaintiffs specifically request 147.8 hours for Mr. Preso, 293.2 for Mr. Scrimshaw, and 107.6 hours for the law clerks and extern.

After having conducted an initial review of Plaintiffs' timesheets, the Court agrees the fees and hours expended appear to be reasonable. Because Plaintiffs have met their initial burden to demonstrate the reasonableness of the request, the burden now shifts to Defendants to oppose it. *See Crow Indian Tribe*, 2021 WL 3142155, at *5.

Defendants argue the claimed hours are improperly inflated, duplicative, or not compensable, "particularly considering the level of expertise Plaintiffs claim entitles them to the requested rates." (Doc. 88 at 19, 20.) Defendants take specific issue with Plaintiffs' entry for 2.3 hours expended on motions for extensions, 51.6 hours on complaints, 66 hours for the notice of intent, 311.2 hours on the merits briefing, and request for hours billed by multiple lawyers performing the same or similar tasks. (*Id.* at 20.) "Given the level of experience that Plaintiffs' counsel attest to," Defendants conclude, "it should not have taken them so much time to perform tasks, and a reduction on the fees requested for several categories of work is warranted." (*Id.* at 21.)

11

The Court declines Defendants' invitation to micromanage Plaintiffs' litigation work. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. "The Court will not scrutinize Plaintiffs' timesheet with a red pen." *Crow Tribe*, 2021 WL 3142155, at *9. Moreover, the Court will not substitute its own judgment for that of Mr. Preso and Mr. Scrimshaw with respect to the hours required to litigate this case. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Mr. Preso and Mr. Scrimshaw are, as discussed above, experienced attorneys in the field of environmental law. By all appearances, these attorneys exercised sound and reasonable judgment with regard to their case management and workload decisions.

Notwithstanding the above, in *Crow Indian Tribe*, 2021 WL 3142155, at *5, this Court permitted compensation for 194.5 hours of attorney time spent on background research, the notice letter, and the complaint. Here, the complaint at issue included "significant density of detail" with respect to the history and biology of grizzly bear and bull trout, "the relevant complex statutory frameworks," as to Defendants' alleged ESA violations, thus justifying the time spent researching and drafting. *See Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, 2008 WL

12

4866063, at *11 (D. Or. Nov. 5, 2008) (finding reasonable 89.5 hours of pre-litigation work in ESA case). The Court similarly does not find Plaintiffs' allocation of time on the merits briefing duplicative or excessive. Although the litigation "related to a remanded Biological Opinion that was the subject of a prior case," (Doc. 88 at 17–18) the Biological Opinion at issue here presented new rationales regarding motorized trespass and culvert removal. *See Swan View Coal.*, 2024 WL 3219206, at *7–*11, *14–*16. Plaintiffs were also required to again fully brief the unused road issue left unresolved by *Flathead I. See id.* at *12–*14. Finally, contrary to Defendants' contentions, Plaintiffs' objections to Judge DeSoto's Findings and Recommendation did not merely "rehash" prior arguments; it is the Court's opinion that Plaintiffs, like Defendants, responded specifically to Judge DeSoto's determinations in accordance with the Findings and Recommendation process. (Doc. 61 at 2–17.)

## III. Costs

Plaintiffs further seek recovery of $1,129 in non-taxable costs and expenses related to prosecuting this case. (Docs. 85 at 25; 86-7.) Recovery of "costs of litigation" is authorized by the ESA, 16 U.S.C. § 1540(g)(4). Relying on *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 340 (2019)), Defendants argue that Plaintiffs' recovery should be limited to only taxable filings and transcript fees. (Doc. 88 at 21–22.) However, the Ninth Circuit has "repeatedly allowed prevailing

parties to recover non-taxable costs where statutes authorize attorney's fee awards to prevailing parties," *Grove v. Wells Fargo Fin. Cal.*, 606 F.3d 577, 580 (9th Cir. 2010), and this District has awarded similar costs as those sought by Plaintiffs in *Wildearth Guardians v. Steele*, 2022 WL 17665569, at *6 (D. Mont. Dec. 14, 2022). Plaintiffs shall therefore recover their non-taxable costs associated with this litigation.

## IV.   Fees on Fees

This Court has discretion to award fees on fees. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). Fee-shifting statutes largely treat cases holistically, allowing counsel to demand fees accrued during fee litigation in addition to those accumulated during the original case. *Comm'r, INS v. Jean*, 496 U.S. 154, 161–52 (1990). Attorney fee disputes should not extend litigation, and parties are strongly encouraged to settle such matters between them. *Hensley*, 461 U.S. at 437.

Plaintiffs seek recovery for 88.6 hours expended litigating the present Motion, for a total of $25,582. (Docs. 90 at 15; 90-1.) Defendants counter that Plaintiffs should not recover fees on fees, urging this Court to exercise its discretion to find that any amount awarded on the merits will "provide[] sufficient compensation to counsel." (Doc. 88 at 26 (citing *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991).). In the event fees on fees are

14

awarded, Defendants alternatively request a percentage reduction commensurate with any reduction taken elsewhere in the case. (Doc. 88 at 26.)

The Court disagrees that a merits award sufficiently compensates Plaintiffs for all the work expended in this case. "Plaintiffs are entitled to fair pay for the entirety of the work performed," and "[i]t is not fair to ask Plaintiffs to bear the burden of [] Defendants' decision to drive up litigation costs by failing to settle within the ballpark of Plaintiffs' reasonable fee request." *Crow Indian Tribe*, 2021 WL 3142155, at *10. Indeed, Plaintiffs filed the present Motion seeking fees only after settlement negotiations failed. (*See* Doc. 83.) Because no deduction was taken above, the Court finds it appropriate to award Plaintiffs the full $25,582 sought for bringing this Motion.

### CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Plaintiffs' Motion for Attorney Fees and Costs (Doc. 84) is GRANTED. Plaintiffs are entitled to merits-related attorney fees in the amount of $136,546, costs in the amount of $1,129.69, and attorney fees related to litigating the present Motion in the amount of $25,582, for a total award of $163,257.69.

DATED this 10th day of March, 2026.

Dana L. Christensen, District Judge
United States District Court